# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| PARAGON DATA SYSTEMS, INC., | ) |
| Plaintiff, | ) **CASE NO. 1:20-cv-01883** |
| v. | ) District Jude Dan Aaron Polster |
| CINTAS CORPORATION, *et al.*, | ) Magistrate Judge David Ruiz |
| Defendant. | ) |

### **DEFENDANTS SAP AMERICA, INC.'S MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PROTECTIVE ORDER**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND .............................................................................................................. 2

III. ARGUMENT .................................................................................................................... 3

    A. SAP Can Show Good Cause for Entering a Protective Order ............................... 3

        1. Improperly Limited Disclosure of SAP's Trade Secrets and Source Code Will Cause Competitive Harm to SAP ............................................ 5

        2. SAP Would Be Harmed If Plaintiff's CEO Had Access to SAP's Commercially Sensitive Information and Trade Secrets ........................... 6

    B. A Protective Order Will Not Unduly Burden Plaintiff ......................................... 7

IV. CONCLUSION ................................................................................................................. 8

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Cheryl & Co. v. Krueger*,
   No. 2:18-CV-1485, 2019 WL 7821038 (S.D. Ohio Mar. 11, 2019)..........................................5

*Datatrak International, Inc. v. Medidata Sols., Inc.*,
   No. 1:11 CV 458, 2011 WL 3652444 at *1 (N.D. Ohio Aug. 19, 2011)..................................6

*E3 Biofuels, LLC v. Biothane Corp.*,
   No. 1:12-MC-76, 2013 WL 3778804 (S.D. Ohio July 18, 2013)..............................................7

*Nix v. Sword*,
   11 F. App'x 498 (6th Cir. 2001) ...............................................................................................3

*R.C. Olmstead, Inc. v. CU Interface LLC*,
   2008 WL 11381824 (N.D. Ohio, Aug. 14, 2008) .....................................................................4

*ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC*,
   2008 WL 5634214 (E.D.Tex. March 14, 2008)........................................................................6

*Stout v. Remetronix, Inc.*,
   298 F.R.D. 531 (S.D. Ohio 2014)..............................................................................................3

*United States ex rel. Daugherty v. Bostwick Labs.*,
   No. 1:08-cv-354, 2013 WL 3270355 (S.D. Ohio June 26, 2013)..............................................6

*Westbrook v. Charlie Sciara & Son Produce Co.*,
   No. 07–2657, 2008 WL 839745 (W.D. Tenn. Mar. 27, 2008) ..................................................3

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 26(c)(1)(G)....................................................................................3

I.     INTRODUCTION

Plaintiff Paragon Data Systems, Inc. ("Plaintiff") has accused the Defendants in this case of trade secret misappropriation, asserting that Defendant Cintas Corporation ("Cintas") improperly disclosed Plaintiff's commercially sensitive information to employees of Defendant SAP America Inc. ("SAP") and Defendant ACSIS, Inc. ("ACSIS") (collectively "Defendants"). The information that Plaintiff alleges was improperly disclosed relates to software for an automated uniform inventory management and stock room process.  Plaintiff now seeks to provide its own employee and competitive decision maker unfettered access to SAP's trade secrets and commercially sensitive information related to such software.  Plaintiff cannot have it both ways.  Information related to the provision of software cannot be a trade secret capable of causing competitive harm in the hands of a third party only when that information belongs to Plaintiff.

SAP seeks only an appropriate limitation as to the disclosure of its trade secrets, source code, and other commercially sensitive information to prevent the type of harm that Plaintiff now asserts, not to block production in its entirety.  A provision allowing this type of information to be designated as attorney's eyes only ("AEO"), *i.e.*, disclosed only to outside counsel and designated experts, is an appropriate limitation commonly employed to strike a balance between the right to relevant, discoverable information and legitimate concerns surrounding disclosure of highly confidential, sensitive information.  Although the form protective order in the Northern District of Ohio imposes some limitations on the disclosure of confidential information, the form order is designed to strike this balance in an ordinary case, where the relevant information to be disclosed does not typically rise to the same level of commercial sensitivity.  In the current circumstances, the addition of limited AEO and source code provisions as proposed by SAP and agreed to by Defendants Cintas and ACSIS is warranted.

## II. BACKGROUND

On April 24, 2019, as part of a case proceeding in the Court of Common Pleas for the State of Ohio, Plaintiff served a Subpoena to Produce Documents or Things for Discovery Pursuant to Rule 4 009.22 ("the Subpoena") on SAP. (*See* Exh. B.) Among the documents requested by the Subpoena were business communications between SAP and its customer, Cintas, relating to an automated inventory management system SAP provided to Cintas (Request Nos 1–5); written agreements between SAP and Cintas relating to the system provided to Cintas (Request No. 6); documents related to the development of the system provided to Cintas (Request No. 7); and documents related to "the inspection of [Plaintiff's] Clearview systems in use at Cintas Corporation at any time." (Request No. 8). (*Id.*) All of these Requests sought trade secrets or other commercially sensitive information exchanged between SAP and Cintas.

In response to the subpoena, SAP, then a third party, produced documents pursuant to the Protective Order entered in that case. SAP had no input whatsoever in drafting or negotiating the terms of that protective order. Plaintiff and Cintas negotiated and agreed to the terms of the protective order, which included an attorneys' eyes only designation.

On August 3, 2020, purportedly based on information from the documents SAP produced pursuant to the subpoena, Plaintiff filed a First Amended Complaint naming SAP as a defendant and accusing SAP of, *inter alia*, trade secret misappropriation. Plaintiff asserts that Cintas allegedly shared Plaintiff's trade secrets with SAP so that SAP could develop competing software and replace Plaintiff as Cintas's supplier of automated uniform inventory management and stock room process. On September 16, 2020, Plaintiff served its First Set of Consolidated Discovery Requests on SAP (*see* Exh. C), which seek additional commercially sensitive information, including, for example, internal communications relating to project design with SAP's customers and contractors (Requests Nos. 5-10).

In compliance with the Court's order during the Case Management Conference on September 16, 2020, the parties met and conferred regarding an appropriate protective order for this case, but reached an impasse. Defendants proposed that disclosure of certain trade secret, source code, or other commercially sensitive information be limited to outside counsel and experts, preventing the employees of any party from gaining unwarranted access to any other party's highly confidential information. While Plaintiff agrees that disclosure of certain information should be limited, Plaintiff also believes that one of its employees should be granted unfettered access to all of the other parties' trade secrets, source code, and commercially sensitive information.

### III.   ARGUMENT

The Court has broad discretion to enter a protective order under Rule 26(c). Rule 26(c)(1)(G) specifically allows for the issuance of protective orders in cases involving trade secrets, either by blocking their production entirely or limiting their usage or distribution. SAP, as the party seeking a protective order, bears the burden of establishing good cause for such protections. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001), *Stout v. Remetronix, Inc.,* 298 F.R.D. 531, 534 (S.D. Ohio 2014). "AEO designation can be justified upon a specific factual showing that 'especially sensitive information is at issue or the information is to be provided to a competitor.'" *Stout*, 298 F.R.D. at 535 (quoting *Westbrook v. Charlie Sciara & Son Produce Co.*, No. 07–2657, 2008 WL 839745, at *4 (W.D. Tenn. Mar. 27, 2008)). Good cause justifies SAP's request for a protective order to prevent competitive harm.

#### A.   SAP Can Show Good Cause for Entering a Protective Order

It is unsurprising that in a trade secret case relating to the provision of software, a significant amount of relevant information is highly confidential, disclosure of which could cause competitive harm. In this case specifically, Plaintiff has requested documents containing SAP's trade secrets and other highly confidential and commercially sensitive information such as source

3

code, software infrastructure, and know-how reflecting the ways in which SAP tackles problems and approaches projects relating to the provision of process solutions. Disclosure of this type of information to Plaintiff's employee would harm SAP by granting the Plaintiff unfair access to tools that would help Plaintiff compete against SAP.

The form protective order in the Northern District of Ohio provides some general protection for confidential information in Paragraph 5, but Paragraph 5(b)(2) allows access by "Parties and employees of a party to this Order" to that confidential information. The form protective order indicates that where documents contain "highly sensitive trade secrets or other highly sensitive competitive or confidential information," a party may move to add an AEO provision, as SAP proposes here, to prevent disclosure of such highly confidential information to parties and their employees. (*See* Form Protective Order, ¶5(b)(2), n.2). Plaintiff's counsel vaguely asserts that it needs to disclose SAP's trade secrets and confidential information to its CEO in order to properly advise Plaintiff on litigation strategy. However, trade secret cases are effectively litigated on a regular basis without party employees gaining access to another party's highly confidential information, and Plaintiff has not identified any reason why that would not also be the case here. Under the AEO provisions proposed by SAP, Plaintiffs' experts will still be able to compare the source code to identify any alleged similarities and allow the Plaintiff to effectively litigate its case. *See R.C. Olmstead, Inc. v. CU Interface LLC*, 2008 WL 11381824, at *5 (N.D. Ohio, Aug. 14, 2008) (limiting disclosure of source code to experts and counsel, finding that "[w]hile [the plaintiff] may believe that its principal employees are in the best position to evaluate [the defendant's] end use product, there is no reason why [the plaintiff's] experts cannot evaluate the software for possible similarities with [the plaintiff's] software"). Given the nature of the sensitive information relevant to Plaintiff's discovery requests and the harm that would result from

disclosing such information to a competitive decision maker, there is good cause to justify the entry of a protective order in this action.

### 1. Improperly Limited Disclosure of SAP's Trade Secrets and Source Code Will Cause Competitive Harm to SAP

Plaintiff's own allegations in its First Amended Complaint state that SAP's software was developed to replace Plaintiff's software (First Amended Complaint ¶17), that "SAP and ACSIS replaced Paragon as the supplier to Cintas of an automated uniform inventory management and stock room process after SAP and ACSIS were provided access to the 'Paragon Technology[,]' " (*id.*, ¶18), and that Cintas allegedly shared Plaintiff's trade secrets with SAP so that SAP could develop competing software and replace Plaintiff as Cintas's supplier of automated uniform inventory management and stock room process (*id.*, ¶17). It is not disputed that until 2017, Cintas used Plaintiff's automated uniform inventory management and stock room process, and then replaced that system with a one provided by SAP. If the alleged disclosure of "Paragon Technology" related to the development of an automated uniform inventory management and stock room process to SAP's employees caused competitive harm to Plaintiff as alleged, the reverse must also be true: disclosure of SAP's trade secrets and source code to Paragon employees would cause reciprocal competitive harm. Plaintiff cannot have it both ways. SAP cannot be a competitor when it supports Plaintiff's trade secret allegations but not be a competitor when it comes to the danger associated with the disclosure of sensitive commercial information. The risk of competitive harm weighs towards the grant of a protective order. *Cheryl & Co. v. Krueger*, No. 2:18-CV-1485, 2019 WL 7821038, at *2 (S.D. Ohio Mar. 11, 2019) ("Courts have routinely recognized that when parties compete in the same industry, an [AEO] designation strikes the appropriate balance between a litigant's right to relevant discoverable information and the legitimate concerns surrounding disclosure of highly confidential sensitive information to a direct

5

competitor." (quoting *United States ex rel. Daugherty v. Bostwick Labs.*, No. 1:08-cv-354, 2013 WL 3270355, at *2 (S.D. Ohio June 26, 2013)).

### 2. SAP Would Be Harmed If Plaintiff's CEO Had Access to SAP's Commercially Sensitive Information and Trade Secrets

Allowing Plaintiff's CEO, who is undoubtedly involved in competitive decision-making, to review SAP's commercially sensitive documents would circumvent SAP's ability to protect its confidential and trade secret information. This is particularly so given Plaintiff's self-portrayal as "a small, local, privately-held company," where the CEO is likely involved in business strategy and technology development decisions as well as customer communications, sales, and retention. Plaintiff's CEO's status as a competitive decision maker weighs heavily against granting access to SAP's trade secrets, source code, and other commercially sensitive information and communications. *See Datatrak International, Inc. v. Medidata Sols., Inc.,* No. 1:11 CV 458, 2011 WL 3652444 at *1 (N.D. Ohio Aug. 19, 2011) ("Involvement in 'competitive decisionmaking' is the oft-cited most critical factor weighing in favor of denial of access" quoting *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC,* 2008 WL 5634214 (E.D.Tex. March 14, 2008)).

Courts must balance the need for access with the risk of inadvertent disclosure. *See id.* (denying defendant's motion to expand an existing protective order to allow disclosure to in-house counsel, finding that the need for access was too minor in comparison to the risk of disclosure to key decision-makers). Even if there is no intentional use of SAP's information, Plaintiff's CEO will not be able to "unlearn" SAP's trade secrets associated with the SAP system that replaced the Plaintiff's Clearview system. Exposure of SAP's trade secrets related to that system could be used for Plaintiff's own future development, whether intentionally or inadvertently, just as Plaintiff alleges its own trade secrets may have been used in the development of SAP's system. Likewise, Plaintiff's CEO will not be able to "unlearn" SAP's sales strategies or evaluations of the

6

competitive landscape that may be gleaned from this information, and even inadvertent use of that information could significantly harm SAP. The harm that may occur if SAP's trade secrets, source code, and other confidential information is turned over to Plaintiff's CEO demonstrates good cause for a protective order.

**B.    A Protective Order Will Not Unduly Burden Plaintiff**

A protective order limiting disclosure of particularly sensitive information to outside counsel and the parties' experts will not place any undue burden on Plaintiff. AEO orders are frequently approved as a compromise between allowing total discovery and protecting crucial business information. *E.g.*, *E3 Biofuels, LLC v. Biothane Corp.*, No. 1:12-MC-76, 2013 WL 3778804 at *3 (S.D. Ohio July 18, 2013) (stating that courts "routinely" approve protective orders utilizing the "attorney's eyes only" designation in cases involving trade secrets and other sensitive business information).

Plaintiff's apparent reason for insisting on disclosure of SAP's trade secrets and source code to its CEO is that, unlike the Defendants, Plaintiff does not have in-house counsel. However, whether or not Plaintiff has in-house counsel is irrelevant to SAP's proposal to limit the disclosure of particularly sensitive information to outside counsel. Such a provision does not place Plaintiff in a different position than SAP, as the limitation on disclosure to outside counsel would apply equally to SAP. Thus, to the extent an AEO provision would impose a burden on Plaintiff, it imposes an equal burden on SAP. There is no need to allow employees of either Plaintiff or SAP indiscriminate access to the other party's trade secrets, source code, and other commercially sensitive information. An AEO provision as proposed by SAP mitigates the danger of disclosure while still allowing the parties to meaningfully litigate the case.

## IV. CONCLUSION

For the foregoing reasons, SAP respectfully requests that the Court enter a protective order in the instant action as outlined above and attached as Exhibit A. Defendants Cintas and ACSIS join in SAP's request for the reasons stated above.

| | |
|---|---|
| Dated: October 13, 2020 | Respectfully submitted,<br><br>*/s/ T. Kaitlin Crowder*<br>Robert P. Ducatman (3571)<br>Thomas R. Goots (66010)<br>T. Kaitlin Crowder (95796)<br>Michael Atkins (99164)<br>JONES DAY<br>901 Lakeside Ave.<br>Cleveland, OH 44114<br>(216) 586-3939<br>rducatman@jonesday.com<br>trgoots@jonesday.com<br>kcrowder@jonesday.com<br>matkins@jonesday.com<br><br>*Counsel for SAP America Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of October, 2020, a copy of the foregoing was served upon counsel of record via the Court's electronic filing system to the following email addresses:

Ezio A. Listati
Tim Collins
Leo M. Spellacy, Jr.
THRASHER, DINSMORE & DOLAN LPA
1111 Superior Avenue, Suite 412
Cleveland, OH 44114
(216) 255-5431
elistati@tddlaw.com
tcollins@tddlaw.com
lspellacy@tddlaw.com

*Counsel for Paragon Data Systems, Inc.*

Dated:     October 13, 2020

*/s/ T. Kaitlin Crowder*
T. Kaitlin Crowder
*Counsel for SAP America Inc.*