IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PARAGON DATA SYSTEMS, INC., | CASE NO. 1:20-cv-01883-DAP |
| Plaintiff, | |
| v. | JUDGE DAN AARON POLSTER |
| | MAGISTRATE JUDGE DAVID A. RUIZ |
| CINTAS CORPORATION, *et al.*, | |
| | **FIRST AMENDED COMPLAINT FOR** |
| Defendants. | **MONEY DAMAGES** |
| | |
| | **(JURY DEMAND ENDORSED HEREON)** |

Plaintiff Paragon Data Systems, Inc. ("Paragon" or "Plaintiff"), by and through its undersigned attorneys, for its First Amended Complaint herein, states as follows:

**GENERAL STATEMENT OF THE NATURE OF THIS ACTION**

This action is brought by Paragon to recover money damages caused by Defendant Cintas Corporation ("Cintas" or "Defendant Cintas"), SAP America, Inc. ("SAP" or "Defendant SAP"), and ACSIS, Inc. ("ACSIS" or "Defendant ACSIS") (Cintas, SAP and ACSIS are sometimes collectively referred to herein as "Defendants"), and a permanent injunction, for misappropriation of trade secrets, breaches of contract, unjust enrichment, civil theft and civil conspiracy, by Defendants, each as described further below.

**PARTIES**

1. Plaintiff Paragon is an Ohio corporation with its place of business located at the address in the above caption. Paragon was, at all relevant times, engaged in the business of integration of software solutions for companies with data collection requirements.

2. Defendant Cintas is a State of Washington corporation with its principal place of business and headquarters in Cincinnati, Ohio. Cintas is and was, at all relevant times, engaged in the business of supplying corporate identity uniforms and related items.

3. Defendant SAP is a Delaware corporation whose principal place of business is 3999 West Chester Pike, New Town Square, PA 19073. SAP is and was, at all times relevant, engaged in the business of designing and implementing software and technology solutions for, inter alia, Cintas at its Cincinnati, Ohio headquarters, and other branch office locations.

4. Defendant ACSIS is a Delaware corporation whose principal place of business is 50 Lake Center, Executive Parkway, Suite 201, Marlton, NJ 08053. ACSIS is and was, at all times relevant, engaged in the business of designing and implementing software and technology solutions for, inter alia, Cintas at its Cincinnati, Ohio headquarters, and other branch offices.

## BACKGROUND AND GENERAL ALLEGATIONS

5. Prior to May 2011, Cintas utilized a manual inventory and stock room process to manage and track uniforms provided to, and picked up from, its many customers. Learning of Cintas's desire to automate its uniform inventory management and stock room process, Paragon developed proprietary software which worked with certain configurations of equipment identified solely for Cintas' application.

6. Effective May 1, 2011, Cintas entered into a contract entitled "PDS Clearview Stockroom Visibility Software System, Master Services and License Agreement" (the "2011 Agreement"), a true and correct copy of which (without Schedules) is attached hereto as Exhibit 1. The 2011 Agreement was to remain in force and effect until May 1, 2014. The 2011 Agreement gave Cintas access to what was described therein as the "Clearview System," which integrated Paragon's proprietary software with certain hardware to achieve Cintas's desired result.

7. Being satisfied with the performance of Paragon's Clearview System during the term of the 2011 Agreement, effective May 1, 2014, Cintas entered into another contract with Paragon entitled "PDS Clearview Stockroom Visibility Software System, Master Services and License Agreement" (the "2014 Agreement"), a true and correct copy of which (without Schedules) is

2

attached hereto as <u>Exhibit 2</u>. The 2014 Agreement was essentially a renewal of the 2011 Agreement, with certain exceptions. The 2014 Agreement was to remain in force and effect until May 1, 2017.

8. Pursuant to both the 2011 and 2014 Agreements, Cintas agreed and acknowledged, at Article II, Section 2, in part, that:

> … (iii) the Software, including its underlying technology, software, object and source code, processes, methods, algorithms, user interfaces, know-how and other trade secrets, techniques, designs, discoveries, inventions, structure, features, components, and other tangible or intangible technical material or information; and …
>
> … (iv) the work product, and any other work of authorship or invention conceived of, developed, or created by Paragon relating to the Software (collectively, the "Paragon Technology") and any improvements, derivative works, or other modifications to the Paragon Technology, including those made in response to customer specifications or a Change Request (defined below), is and shall continue to be owned by Paragon.

9. To protect Paragon's rights in its intellectual property, both the 2011 and 2014 Agreements specifically restricted Cintas's disclosure of the "Paragon Technology" at Article III, Section 2, as follows:

> Under no circumstances may Customer, without prior written permission from Paragon ... (ii) directly or indirectly provide access to the Paragon Technology to a third party; (iii) copy or permit a third party to copy the Paragon Technology; or (iv) duplicate, examine, adapt, merge, embed, decompile, disassemble, "un-lock", reverse engineer, or create a derivative work from any of the Paragon Technology.

10. Further, pursuant to both the 2011 and 2014 Agreements Paragon was to provide, and did provide, to Cintas certain equipment for Cintas's use at specific business locations. However, the 2014 Agreement removed proration for the Hardware Maintenance Fee from all existing sites,

and only allowed proration for any New Sites as stated in Article VII, Section 3 of the 2014 Agreement.

11. The 2011 and 2014 Agreements were not, however, identical. For example, the 2014 Agreement increased the Annual Maintenance Fee. Further, as stated above, the 2014 Agreement removed proration for the Annual Maintenance Fee from all existing sites, and only allowed proration for any New Sites as stated in Article VII, Section 3 of the 2014 Agreement. During the term of the 2014 Agreement, no "New Sites" were added.

12. Although during the term of the 2014 Agreement the total cost to Cintas was to be $1,151,795.00 during that time Cintas only paid Paragon $1,101,772.00 as a result of which $50,023.00 remains due and owing from Cintas to Paragon under the 2014 Agreement.

13. In 2016, Cintas informed Paragon that it would not enter into another Master Services and License Agreement after the expiration of the 2014 Agreement.

14. In early 2017, Cintas's Wichita facility (Site# 451) violated Article VIII, Section 1 of the 2014 Agreement by purchasing more than 75,000 grading tags from an entity other than Paragon. As a result, revenue in the amount of $3,175.20 (7 cases at $453.60 per case) was diverted from Paragon to a third-party in breach of the 2014 Agreement.

15. The 2014 Agreement terminated/expired on May 1, 2017. Thereafter, Cintas failed to "promptly uninstall all Software and other Paragon Technology" as required by the Agreement. Instead, because Cintas had not completed its replacement of the Clearview System by May 1, 2017, Cintas continued to use the Clearview System until June 8, 2017, when Paragon remotely removed Cintas's access to the Clearview System. As a result, for a period of 39 days after termination/expiration of the 2014 Agreement, Cintas continued to use the Clearview System without license to do so in breach of the 2014 Agreement.

16. Cintas's use of the Clearview System for the additional 39 days required Cintas to pay Paragon $41,101.32 for access to the software and $49,952.80 for continued use of Paragon's hardware for a total amount due resulting from the additional 39 days of Cintas's use of the Clearview System of $91,054.12.

17. Prior to May 1, 2017 Cintas breached the 2014 Agreement by providing access to the "Paragon Technology" to SAP, ACSIS, and perhaps others, in order to facilitate SAP's development of software to replace the Clearview System. The "Paragon Technology" includes (a) Clearview Warning; (b) Clearview Marketplace; (c) Clearview Safety System, a/k/a ClearSafe; (d) Perfectly Loaded Truck, a/k/a PLT, ClearLoad and Clearview Loading System; (e) DriveSafe, a/k/a Drive Safe Paperless Inspection System; and (f) Clear Count, a/k/a Cleanview.

18. SAP and ACSIS replaced Paragon as the supplier to Cintas of an automated uniform inventory management and stock room process after SAP and ACSIS were provided access to the "Paragon Technology."

19. Both the 2011 and 2014 Agreements provide, at Article XIV, Section 3, as follows:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio. Any suit relating to this Agreement shall be instituted in a state or federal court in Cuyahoga County, Ohio, and the parties to this Agreement hereby waive any dispute over and agree to the venue and personal jurisdiction in such a court.

## COUNT ONE
### (Ohio Trade Secrets Act Violation)

20. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein, and states further:

21. Ohio has adopted the Uniform Trade Secret Act, ORC §§1333.61-69, which prohibits the misappropriation of the Trade Secrets of another.

22. Defendant Cintas was aware through its contractual agreements with Paragon that the Paragon Technology were Paragon's Trade Secrets, and agreed not to disclose same to third-parties without the prior express written consent of Paragon.

23. Upon information and belief, Defendant SAP and Defendant ACSIS knew or had reason to know that Paragon's Trade Secrets, which they used for the benefit of Cintas and themselves, was acquired by Cintas under circumstances giving rise to a duty to maintain its secrecy or limit its use.

24. The Defendants misappropriated Paragon's Trade Secrets without the prior express written permission of Paragon for the Defendants' collective efforts to design and implement software and technology solutions for Cintas at its Cincinnati, Ohio headquarters, and other branch offices, replacing the Paragon Technology.

25. As a direct and proximate result of the misappropriation, Defendants were able to develop a similar product to the Paragon Technology, in a shortened amount of time and at less cost, by utilizing Paragon's Trade Secrets.

26. As a direct and proximate result of the complained of conduct, Paragon lost profits and sustained damages, while Defendants made profits, and enjoyed saving the cost of research, design, and implementation resources to achieve the system built to replace the Paragon Technology, and otherwise.

27. Plaintiff is entitled to damages for the complained of conduct in an amount in excess of $25,000.00 for lost profits, disgorgement of savings enjoyed by Defendants and each of them, and such further and additional damages as will be demonstrated at trial, including multiple damages and reasonable attorneys' fees, litigation costs, court costs and a reasonable royalty, all as will be demonstrated at trial.

## COUNT TWO
### (Federal Defend Trade Secrets Act Violation)

28. Plaintiff incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein, and states further:

29. The Federal Defend Trade Secrets Act, 18 USC §1831, et seq., prohibits the misappropriation of the Trade Secrets of another.

30. Defendants misappropriated Plaintiff's Trade Secrets.

31. Defendants willfully and maliciously misappropriated Plaintiff's Trade Secrets.

32. As a direct and proximate result of Defendants' misappropriation, Paragon lost profits and sustained damages, while Defendants made profits, and enjoyed saving the cost of research, design, and implementation resources to achieve the system built to replace the Paragon Technology, and otherwise.

33. Plaintiff is entitled to damages for the complained of conduct in excess of $25,000.00, for lost profits, disgorgement of savings enjoyed by Defendants and each of them, a reasonable royalty, multiple damages, reasonable attorneys' fees, litigation costs and court costs, all as will be demonstrated at trial.

## COUNT THREE
### (Breach of Contract - Confidentiality)

34. Plaintiff incorporates by reference the allegations contained in the above paragraphs as if set forth fully herein, and states further:

35. Defendant Cintas breached the 2014 Agreement by failing to maintain the confidentiality of the Paragon Technology as agreed.

36. As a direct result of Defendant Cintas's breach of the 2014 Agreement, Plaintiff has suffered damages in an amount as yet undetermined in excess of $25,000.00 by Defendant Cintas having provided access to the Paragon Technology to SAP and ACSIS, and perhaps others, thereby

improperly facilitating the development of an automated system to replace the Clearview System (Paragon Technology).

## COUNT FOUR
### (Breach of Contact – Unauthorized Use of Paragon Technology Post-Contract Termination)

37. Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein, and states further:

38. Defendant Cintas utilized the Paragon Technology without authorization after the 2014 Agreement was terminated/expired, thereby violating the contract Cintas had with Paragon.

39. The contract rate and/or reasonable value of the Paragon Technology used by Cintas during the relevant time period post-contract termination was $91,054.12, which are the damages directly and proximately sustained by Paragon from the complained of conduct by Cintas.

## COUNT FIVE
### (Breach of Contract – Improper Purchase of Products During the Existence of the Paragon Contract)

40. Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein, and states further:

41. Defendant Cintas purchased product from third-parties when it was contractually required to purchase exclusively from Paragon during the term of the contract Cintas had with Paragon, thereby violating said contract.

42. The Contract rate and/or reasonable value of the products purchased by Cintas from third-parties was at least $3,175.20, which are the damages directly and proximately sustained by Paragon from the complained of conduct by Cintas.

## COUNT SIX
### (Breach of Contract- Underpayment of Account)

43. Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein, and states further:

44. Defendant Cintas underpaid the amount it owed under the 2014 Agreement, without legal excuse, leaving a balance due and owing of $50,023.00 since May 1, 2017, which are the damages directly and proximately sustained by Paragon from the complained of conduct by Cintas.

### COUNT SEVEN
### (Unjust Enrichment)

45. Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein, and states further:

46. Defendant Cintas's use of the Paragon Technology (Clearview System) before and after the 2014 Agreement terminated resulted in Cintas's receipt of a benefit for which it has not paid Plaintiff, despite Plaintiff's demand for same.

47. Under the circumstances, Defendant received a benefit worth $144,252.32 for which Plaintiff should be compensated to avoid unjust enrichment to Defendant.

### COUNT EIGHT
### (Civil Theft)

48. Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein, and states further:

49. The Violation of the Ohio Uniform Trade Secret Act and/or the Federal Defend Trade Secrets Act by Defendants is, inter alia, a criminal act which is subject to a civil action for damages for civil theft.

50. As a direct and proximate result of the civil theft by Defendants, Plaintiff has suffered damages in an amount in excess of $25,000.00, as will be more fully shown at the trial of this matter.

### COUNT NINE
### (Civil Conspiracy)

51. Plaintiff incorporates by reference the allegations contained in the above paragraphs as if fully set forth herein, and states further:

52. The complained of conduct by Defendants constitutes a malicious combination of at least the three (3) named defendants to injure Plaintiff in a way not competent for one alone, constituting a civil conspiracy.

53. As directed and proximate result of the civil conspiracy by Defendants, Plaintiff has been damaged in an amount in excess of $25,000.00, as will be more fully shown at the trial of this matter.

WHEREFORE, Plaintiff Paragon Data Systems, Inc. demands judgment in its favor and against Defendants as follows:

   A. On Count One, compensatory damages in an amount in excess of $25,000.00 for Plaintiff's lost profits, disgorgement of savings enjoyed by Defendants for use of Paragon's Trade Secrets, a permanent injunction, multiple damages, reasonable attorneys' fees, litigation expenses, court costs and a reasonable royalty from Defendants, jointly and severally;

   B. On Count Two, compensatory damages in an amount in excess of $25,000.00 for Plaintiff's lost profits, disgorgement of savings enjoyed by Defendants for use of Paragon's Trade Secrets, a reasonable royalty, multiple damages, reasonable attorneys' fees, litigation expenses and court costs from Defendants, jointly and severally;

   C. On Count Three, compensatory damages in an amount in excess of $25,000.00, Plaintiff's lost profits, disgorgement of savings enjoyed by Defendant Cintas for its unauthorized disclosure of Paragon's Technology, reasonable attorneys' fees, litigation expenses and court costs;

   D. On Count Four, for compensatory damages from Defendant Cintas in the amount of $91,054.12, plus reasonable attorneys' fees, litigation expenses and court costs;

   E. On Count Five, compensatory damages in the amount of $3,175.20, from Defendant Cintas, plus reasonable attorneys' fees, litigation expenses and court costs;

   F. On Count Six, compensatory damages in the amount of $50,023.00 from Defendant Cintas, reasonable attorneys' fees, litigation expenses and court costs;

   G. On Count Seven, compensatory damages from Defendant Cintas of at least $144,252.32, representing the reasonable value of the unauthorized use of Paragon's Technology by Cintas before and after the contract between Cintas and Paragon was terminated/expired;

H. On Count Eight, compensatory damages in an amount in excess of $25,000.00, punitive damages in an amount in excess of $25,000.00, reasonable attorneys' fees, litigation expenses and court costs from the Defendants, jointly and severally;

I. On Count Nine, compensatory damages in an amount in excess of $25,000.00, punitive damages in an amount in excess of $25,000.00, reasonable attorneys' fees, litigation expenses and court costs from the Defendants; jointly and severally; and

J. As to all counts, pre- and post- judgment interest at the highest lawful rates, and such other and additional relief as this Court may deem just, equitable and appropriate under the circumstances, including exemplary damages and reasonable attorneys' fees.

        Respectfully submitted,

        */s/ Ezio A. Listati*
        Ezio A Listati, Esq. (0046703)
        Tim L. Collins, Esq. (0033116)
        Leo M. Spellacy, Jr., Esq. (0067304)
        THRASHER, DINSMORE, & DOLAN, LPA
        1111 Superior Avenue, Suite 412
        Cleveland, OH  44114
        (216) 255-5431 | (216) 255-5450 (fax)
        elistati@tddlaw.com | tcollins@tddlaw.com
        lspellacy@tddlaw.com

        *Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues herein, composed of the maximum number of jurors allowed by law.

*/s/ Ezio A. Listati*
Ezio A Listati, Esq. (0046703)
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 18, 2021 a copy of the foregoing First Amended Complaint for Money Damages was filed electronically.  Notice of this filing will be sent to Defendants' counsel by operation of the Court's electronic filing system.  Parties may access this filing through the Court's System.

*/s/ Ezio A. Listati*
Ezio A Listati, Esq. (0046703)
*Attorney for Plaintiff*